1
2025 CO 41 The People of the State of Colorado, Petitioner v. Kenneth Alfonso Gallegos, Respondent No. 23SC605Supreme Court of Colorado, En BancJune 23, 2025

         
Certiorari to the Colorado Court of Appeals Court of Appeals
Case No. 21CA976

         
Attorneys for Petitioner:

          Philip
J. Weiser, Attorney General Brenna A. Brackett, Assistant
Attorney General Denver, Colorado

         
Attorneys for Respondent:

         
Springer and Steinberg, P.C. Michael P. Zwiebel Harvey A.
Steinberg Denver, Colorado

2

         
JUSTICE BOATRIGHT delivered the Opinion of the Court, in
which CHIEF JUSTICE MÁRQUEZ, JUSTICE HOOD, JUSTICE
GABRIEL, JUSTICE HART, JUSTICE SAMOUR, and JUSTICE
BERKENKOTTER joined.

3

         
OPINION

         
BOATRIGHT, JUSTICE

         ¶1
Kenneth Alfonso Gallegos and three friends set out to obtain
vaping products from a high school classmate, L.C. During the
encounter, a struggle ensued, and one of Gallegos's
friends fatally shot L.C. The People charged Gallegos with
felony murder, with predicate felonies of aggravated robbery,
attempted robbery, and conspiracy to commit aggravated
robbery, along with other charges not relevant here. At
trial, Gallegos denied the charges; his theory of defense was
that he had not planned to rob L.C. and was unaware a gun was
present until it was too late to prevent the shooting.
Gallegos also requested a jury instruction on the affirmative
defense to felony murder, section 18-3-102(2), C.R.S. (2018).
The trial court denied the proposed instruction, deeming the
affirmative defense incompatible with Gallegos's theory
of defense, which the court characterized as an
"outright denial" of any involvement in the
underlying crime.

         ¶2
After a jury found Gallegos guilty, he appealed, and a
division of the court of appeals reversed his felony murder
conviction. People v. Gallegos, 2023 COA 47, ¶
6, 535 P.3d 108, 113. The division held that defendants may
both deny the predicate felony and raise the affirmative
defense to felony murder, and that therefore the trial court
erred by failing to give Gallegos's requested
instruction. Id. at ¶¶ 41-46, 57, 535 P.3d
at 118-19, 121.

4

         ¶3
We granted the People's petition for certiorari review
and now hold that a defendant need not admit the predicate
felony to raise the affirmative defense to felony
murder.[1] Accordingly, we affirm the judgment of the
court of appeals.

         I.
Facts and Procedural History

         ¶4
Gallegos, along with Dominic Stager and Demarea Mitchell,
picked up Juliana Serrano from work. Gallegos drove the group
to meet with an acquaintance, L.C., purportedly to purchase
vaping products. At least some members of the group, however,
had decided that they would take the products without paying.
When the group arrived, L.C. approached the vehicle but
refused to produce the vaping materials before he was paid.
Gallegos, Stager, and Mitchell began searching the car,
supposedly for a lost wallet. During this search, Mitchell
took a gun Stager had brought, exited the vehicle, and
confronted L.C. The two began grappling over the weapon and
both fell to the ground. During the scuffle, Mitchell shot
L.C., who ran into the house screaming. The group quickly
returned to the vehicle, and Gallegos drove them away. L.C.
later died from the gunshot wound.

5

         ¶5
At trial, there was conflicting testimony regarding
Gallegos's role in these events. Stager testified that
the robbery was Gallegos's idea and that Gallegos had
told him they "just needed a gun." Yet Stager also
testified that others possessed the gun on the day of the
attempted robbery, not Gallegos, and that when Gallegos saw
the fight over it, he immediately moved to intervene,
encouraging Serrano and Stager to help him stop the
altercation. Mostly contradicting Stager, Serrano testified
that "[t]here wasn't really a plan," and she
didn't remember if Gallegos was involved in any
discussion of the robbery on the way to L.C.'s home. She
also could not remember whether Gallegos had discussed or had
seen the gun before the scuffle, or whether he had moved to
stop the fight.

         ¶6
Gallegos's theory of defense was that he should be
acquitted of all counts because he did not shoot L.C., plan
the robbery, or even know that the gun was present. Gallegos
also sought to assert the affirmative defense to felony
murder. In doing so, Gallegos requested a jury instruction
tracking the language of section 18-3-102(2), which provides
defendants with an affirmative defense to felony murder if
they meet certain conditions.[2]

6

         ¶7
The trial court declined to issue the instruction, concluding
that the affirmative defense to felony murder was
"diametrically opposed" to Gallegos's theory of
defense, which the court described as an "outright
denial of everything." Moreover, the court stated that
it could not "find even a scintilla of evidence"
supporting one of the affirmative defense's
conditions-that Gallegos "had no reasonable ground to
believe that no other participant was armed with a gun."
See § 18-3-102(2)(d). The jury found Gallegos
guilty of felony murder and other charges.[3]

         ¶8
On appeal, a division of the court of appeals held that
Gallegos's theory of defense did not preclude him from
raising the affirmative defense to felony murder.
Gallegos, ¶¶ 41-46, 535 P.3d at 118-19.
The division noted that neither this court nor the
legislature has imposed a "categorical requirement that
the defendant admit to the underlying charged offense"
to raise an affirmative defense. Id. at ¶ 35,
535 P.3d at 117. The division distinguished this case from
other court of appeals cases holding that defendants who
denied committing the charged offense could not
raise an affirmative defense, reasoning that, unlike the
defenses in those cases, the felony murder defense was not
"inextricably intertwined with the elements of the
[predicate] offense." Id. at ¶¶
28-38, 535 P.3d

7

at 116-18. Consequently, the division overturned
Gallegos's felony murder conviction, affirmed his lesser
convictions, and ordered a new felony murder trial.
Id. at ¶ 57, 535 P.3d at 121.

         ¶9
We granted the People's petition for certiorari.

         II.
Analysis

         ¶10
We begin by introducing the relevant legal framework, which
includes the applicable standard of review and principles of
statutory interpretation, the differences between traverses
and affirmative defenses, and the felony murder statute. We
then evaluate whether defendants must admit to the predicate
felony to raise the affirmative defense to felony murder and
conclude that no such admission is required. Hence, we affirm
the court of appeals.

         A.
Legal Framework

         1.
Standard of Review and Principles of Statutory
Interpretation

         ¶11
Interpretation of a statute defining an affirmative defense,
including evaluation of the defense's elements or
conditions, is a question of law that we review de novo.
People v. Speer, 255 P.3d 1115, 1119 (Colo. 2011);
see also People v. Garcia, 113 P.3d 775, 780 (Colo.
2005). Our objective is to ascertain and give effect to the
legislative intent underlying the statute. People v.
Laeke, 2012 CO 13M, ¶ 11, 271 P.3d 1111, 1114.
"To ascertain legislative intent, we first look to the
statutory language." Id. When the plain
language is unambiguous and the legislature's

8

intent is reasonably certain, our inquiry ends. Jefferson
Cnty. Bd. of Equalization v. Gerganoff, 241 P.3d 932,
935 (Colo. 2010).

         2.
Traverses and Affirmative Defenses

         ¶12
There are two primary defenses to criminal charges: traverses
and affirmative defenses. Roberts v. People, 2017 CO
76, ¶ 19, 399 P.3d 702, 705. A traverse defense seeks to
"refute[] the possibility that the defendant committed
the charged offense by negating one or more elements of that
offense." Id. at ¶ 21, 399 P.3d at 705.

         ¶13
In contrast, "[a]n affirmative defense essentially
admits the defendant's commission of the elements of the
charged act but seeks to justify, excuse, or mitigate the
commission of the act." Id. at ¶ 20, 399
P.3d at 705. In other words, by asserting an affirmative
defense, the defendant attempts to "justif[y] the
conduct on grounds deemed by law to be sufficient to render
the participant exempt from criminal responsibility for the
consequences of the conduct." People v.
Huckleberry, 768 P.2d 1235, 1239 (Colo. 1989).

         ¶14
Affirmative defenses are premised on "conditions"
analogous to a crime's elements. To raise such a defense,
defendants must point to "some credible evidence"
to support each of its conditions. § 18-1-407(1), C.R.S.
(2024); see also Speer, 255 P.3d at 1119. This is a
low bar: We have previously explained that "some
credible evidence" includes "'any credible
evidence . . . even highly improbable'

9

evidence," and is synonymous with "a scintilla of
evidence." Galvan v. People, 2020 CO 82, ¶
24, 476 P.3d 746, 754 (first quoting § 18-1-407(1); then
quoting Speer, 255 P.3d at 1119; and then quoting
People v. Saavedra-Rodriguez, 971 P.2d 223, 228
(Colo. 1998)). Moreover, such evidence need not have been
initially presented by the defendant. See §
18-1-407(1). It may also conflict with other evidence relied
on, or arguments made, by the defendant. See Mathews v.
United States, 485 U.S. 58, 66 (1988) (declining to
"make the availability of an [affirmative defense]
instruction . . . subject to a requirement of consistency to
which no other such defense is subject").

         ¶15
Once properly raised, an affirmative defense effectively adds
a new element to the prosecution's burden regarding the
charged offense. Martinez v. People, 2024 CO 48,
¶ 12, 550 P.3d 713, 716. In that instance, the
prosecution must then both prove the original elements of the
charged offense and disprove the validity of the affirmative
defense beyond a reasonable doubt. People v.
Pickering, 276 P.3d 553, 555 (Colo. 2011); see
also § 18-1-407(2). Prosecutors can overcome an
affirmative defense by disproving at least one of its
conditions beyond a reasonable doubt. See
Huckleberry, 768 P.2d at 1239 ("[E]ven if the
People establish each element of the offense beyond a
reasonable doubt, the defendant cannot be found guilty unless
the additional questions of fact raised by the pleading of
the affirmative defense are disproved."); see
also § 18-1-407(2).

10

         3.
The Affirmative Defense to Felony Murder

         ¶16
Felony murder is a unique crime because it requires the
defendant's commission of another, underlying felony,
which results in the death of a nonparticipant in the
criminal conduct.[4] Under section 18-3-102(1)(b), a defendant
commits felony murder if (1) the defendant commits or
attempts to commit an enumerated offense (the
"predicate" felony), and (2) "in the course of
or in furtherance of" that predicate felony, the death
of someone other than one of the participants in the offense
"is caused by anyone."[5] Felony murder is a strict
liability crime; there is no requirement that the defendant
intended the victim's death. People v. Fisher, 9
P.3d 1189, 1191 (Colo.App. 2000); § 18-3-102(1)(b).

         ¶17
The General Assembly first established the crime of felony
murder in 1971. Comments included with the original statute
expressed the drafters' desire to provide nonkiller
defendants with a means to avoid felony murder liability in
instances where its imposition would be unduly harsh:

[T]he felony murder doctrine, in its rigid automatic
envelopment of all participants in the underlying felony, may
be unduly harsh in particular instances; . . . cases do
arise, rare as they may be, where it would be just and
desirable to allow a nonkiller defendant of relatively minor
culpability a chance of extricating himself from

11

liability for murder-though not, of course, from liability
for the underlying felony.

§ 40-3-102 cmt., 8 C.R.S. (1963 &Supp. 1971). To
address this concern, the legislature included an affirmative
defense specifically for felony murder. See id.;
§ 18-3-102(2).

         ¶18
The affirmative defense effective at the time of
Gallegos's case featured six conditions, requiring that
the defendant:

(a) Was not the only participant in the underlying crime; and

(b) Did not commit the homicidal act or in any way solicit,
request, command, importune, cause, or aid the commission
thereof; and

(c) Was not armed with a deadly weapon; and

(d) Had no reasonable ground to believe that any other
participant was armed with such a weapon, instrument,
article, or substance; and

(e) Did not engage himself in or intend to engage in and had
no reasonable ground to believe that any other participant
intended to engage in conduct likely to result in death or
serious bodily injury; and

(f) Endeavored to disengage himself from the commission of
the underlying crime or flight therefrom immediately upon
having reasonable grounds to believe that another participant
is armed with a deadly weapon, instrument, article, or
substance, or intended to engage in conduct likely to result
in death or serious bodily injury.

§ 18-3-102(2).[6]

12

         ¶19
The question presented by this case is whether a defendant
must admit to the predicate felony to raise the affirmative
defense to felony murder. With the foregoing legal framework
in mind, we now consider this question.

         B.
Defendants Need Not Admit the Predicate Felony to Raise the
Affirmative Defense to Felony Murder

         ¶20
The People maintain that the plain language of the
affirmative defense to felony murder "presupposes a
defendant committed a qualifying felony" and is
therefore "incompatible with [a] denial of participation
in the underlying felony." In support of this position,
they note that four of the affirmative defense's six
conditions reference the defendant being among a group of
"participants" in the predicate offense. §
18-3-102(2). The People also highlight the sixth
condition's requirement that the defendant attempt to
"disengage," § 18-3-102(2)(e), arguing that
defendants can't disengage unless they have
engaged in the commission of the predicate felony in
the first place.

         ¶21
To bolster their plain language arguments, the People assert
that allowing defendants to both deny the commission of the
underlying felony and raise the affirmative defense is
contrary to the premises underlying affirmative defenses
generally. In doing so, they rely on a line of Colorado cases
explaining that, by asserting an affirmative defense, a
defendant essentially admits his presence at and
participation in the charged conduct, but nonetheless seeks
to justify, excuse, or mitigate his liability. See,
e.g., Huckleberry, 768 P.2d at 1238 ("[A]n
affirmative

13

defense basically admits the doing of the act charged but
seeks to justify, excuse or mitigate it."); see also
Pearson v. People, 2022 CO 4, ¶ 18, 502 P.3d 1003,
1007 ("[A] defendant essentially acknowledges
'presence at and participation in the event' but
claims that they were legally justified in doing so
...." (quoting Huckleberry, 768 P.2d at 1239)).
The People also point to People v. Hendrickson, 45
P.3d 786, 792 (Colo.App. 2001), which held that defendants
must admit to the underlying crime to raise the affirmative
defense of entrapment, to argue that affirmative defenses
generally presuppose that the defendant committed
the relevant crime.

         ¶22
To assess these arguments, we now look to the felony murder
statute and evaluate each of the affirmative defense's
conditions in turn.[7]

         1.
The Plain Language of the Affirmative Defense to Felony
Murder Includes No Admission Requirement

         ¶23
The felony murder defense's first condition requires that
the defendant "[w]as not the only participant in the
underlying crime." § 18-3-102(2)(a). Hence, this
condition requires some credible evidence that the defendant,
along with others, participated in the predicate
felony. Id.; § 18-1-407(1). But
participation in criminal conduct does not equate to
commission of an offense. Commission denotes

14

a completed crime, entailing a concurrence of both an
unlawful act (actus reus) and a culpable mental state (mens
rea). See Morissette v. United States, 342 U.S. 246,
251-52 (1952). Participation falls short of requiring that
the criminal act be completed and indicates nothing regarding
a culpable mental state. Thus, pointing to some evidence of
participation in the underlying crime does not
presuppose its commission and is not inconsistent
with a defendant's denial of the predicate
offense.[8]

         ¶24
Turning to the second through fifth conditions, they are
essentially denials of the defendant's acts or
knowledge. Indeed, the second condition is supported by
evidence that the defendant did "not commit the
homicidal act or in any way solicit, request, command,
importune, cause, or aid the commission thereof," while
the third condition requires evidence that the defendant was
"not armed with a deadly weapon." §
18-3-102(2)(b)-(c) (emphases added); see also §
18-1-407(1). To support the fourth condition, a
defendant must point to evidence that they had
"no reasonable ground to believe that any other
participant was armed" with a deadly weapon. §
18-3-102(2)(d) (emphasis added); see also §
18-1-407(1). Likewise, for the fifth condition, a defendant
must offer evidence

15

indicating that they did not "engage in"
conduct creating a substantial risk of death or serious
bodily injury, did not plan to do so, and had
"no reasonable ground to believe that any other
participant intended to engage in [such] conduct."
§ 18-3-102(2)(e) (emphasis added); see also
§ 18-1-407(1). As denials, we perceive nothing in the
second through fifth conditions requiring a defendant to
admit the underlying felony. § 18-3-102(2)(b)-(e).

         ¶25
Lastly, the sixth condition is supported by evidence that the
defendant attempted to "disengage himself from the
commission of the underlying crime . . . immediately upon
having reasonable grounds to believe that another participant
[was] armed with a deadly weapon . . . or intended to engage
in conduct likely to result in death or serious bodily
injury." § 18-3-102(2)(f). As with
"participation," the word "disengage"
implies that the defendant was, to at least some degree,
engaged in the first place. However, for the same reasons
applicable to participation, pointing to evidence of
disengagement from the underlying criminal conduct
does not require a defendant to admit commission of
the predicate felony.

         ¶26
We therefore perceive nothing in the plain language of the
affirmative defense to felony murder that requires the
defendant to admit the commission of the underlying felony.
§ 18-3-102(2).

16

         ¶27
Moreover, as explained above, a defendant may present
evidence supporting an affirmative defense that is
inconsistent with the defendant's other arguments or with
the evidence relied on to make those arguments. See
Mathews, 485 U.S. at 66. Indeed, arguing an affirmative
defense in the alternative is a long-accepted practice.
See, e.g., Stevenson v. United States, 162
U.S. 313, 322-23 (1896) (concluding that the defendant was
entitled to both a manslaughter instruction based on heat of
passion and the arguably inconsistent affirmative defense of
self-defense; explaining, "[I]f there be any evidence
fairly tending to bear upon the issue of manslaughter, it is
the province of the jury to determine from all the evidence
what the condition of mind was, and to say whether the crime
was murder or manslaughter."). Assuming sufficient
evidence supports the affirmative defense to felony murder,
it is the province of the jury to weigh the credibility of
any conflicting evidence and decide both (1) whether the
defendant committed the underlying crime and, if so, (2)
whether the affirmative defense shields the defendant from
felony murder liability.[9] Whether to present

17

inconsistent theories of defense, including the felony murder
affirmative defense, is a trial strategy decision within
defense counsel's discretion.

         ¶28
Indeed, the facts of this case illustrate how a defendant may
satisfy the conditions required to properly raise the felony
murder affirmative defense without admitting to the
commission of the predicate felony.

         ¶29
We begin with the first condition: participation. Here, the
evidence showed that Gallegos drove the group to and from the
scene of the shooting. Gallegos did not deny his involvement
in this regard, and this evidence was sufficient to support
the first condition, along with the participation aspects of
the fourth through sixth conditions. See §
18-3-102(2)(a), (d)-(f).

         ¶30
Next, it is undisputed that Mitchell, not Gallegos, shot
L.C., which was sufficient to support the second condition.
See § 18-3-102(2)(b) (requiring that the
defendant was not the killer and did not assist in or plan
the killing).

         ¶31
Moving to the third condition, Stager and Serrano's
testimony indicated that the gun was never in Gallegos's
possession. The third condition was therefore also supported.
See § 18-3-102(2)(c) (requiring that the
defendant was unarmed).

         ¶32
As to the fourth condition-whether the defendant had
reasonable grounds to believe others were armed-Serrano
testified that "[t]here wasn't really a plan,"
and she didn't remember if Gallegos was involved in any
discussion of the robbery or knew of the gun before the
altercation. True, evidence conflicted on this point,

18

with Stager testifying that Gallegos had told him they
"just needed a gun." However, as with any
affirmative defense, the felony murder defense's fourth
condition requires only a scintilla of evidence in
support-even highly improbable evidence will suffice. See
Galvan, ¶ 24, 476 P.3d at 754. Hence, sufficient
evidence supported the fourth condition. See §
18-3-102(2)(d); § 18-1-407(1).

         ¶33
Under the fifth condition, the defendant must not take part
in conduct that created a substantial risk of death and must
have lacked reason to expect others would engage in such
conduct. § 18-3-102(2)(e). Serrano's testimony that
she didn't remember if Gallegos was present during any
discussion of the robbery plans, and didn't know whether
he was aware of the gun, was sufficient to support this
condition. See id.

         ¶34
Finally, regarding disengagement, Stager testified that
Gallegos moved to intervene in the scuffle over the gun and
encouraged Stager and Serrano to help stop the altercation.
This evidence of an immediate attempt to disengage was
sufficient to support the sixth condition. See
§ 18-3-102(2)(f). Hence, sufficient evidence existed for
Gallegos to put the felony murder defense before the jury,
despite his denial of the predicate felonies. See
§ 18-3-102(2); § 18-1-407(1).

         2.
Previous Colorado Affirmative Defense Cases Do Not Resolve
the Issue Before Us

         ¶35
The People nevertheless rely on cases like
Huckleberry and Pearson for the proposition
that "[i]n asserting an affirmative defense, a defendant
admits to the

19

conduct that gives rise to the charged offense."
Pearson, ¶ 18, 502 P.3d at 1007 (citing
Huckleberry, 768 P.2d at 1238). But these cases do
not resolve the question before us.

         ¶36
In cases like Huckleberry and Pearson, we
wrote in broad terms about the theory animating affirmative
defenses generally, often to explain a related
concept. See Huckleberry, 768 P.2d at 1238-39
(explaining how an alibi defense differs from an affirmative
defense; holding that an alibi defense is not an affirmative
defense); see also Pearson, ¶¶ 18, 33, 502
P.3d at 1007, 1010 (explaining the difference between
traverse and affirmative defenses; holding that defendants
may raise the affirmative defense of self-defense against
harassment charges). Such generalities may well apply to
some affirmative defenses.

         ¶37
For example, Hendrickson, which cites
Huckleberry, considered the entrapment defense.
Hendrickson, 45 P.3d at 790-93. The entrapment
statute provides: "The commission of acts which
would otherwise constitute an offense is not criminal if the
defendant engaged in the proscribed conduct because he was
induced to do so by a law enforcement official ...."
§ 18-1-709, C.R.S. (2024) (emphasis added). Hence, the
plain language of the entrapment defense explicitly
contemplates that the defendant committed the
underlying crime. Id. Consequently, the
"admission" theory explained in cases like
Huckleberry fits with the language of the entrapment
statute.

20

         ¶38
But the felony murder affirmative defense includes nothing
analogous to the entrapment statute's reference to
"commission of acts which would otherwise
constitute an offense." Compare § 18-1-709
(emphasis added), with § 18-3-102(2). Although
the felony murder statute requires that the defendant was
"not the only participant" and attempted to
"disengage" for its affirmative defense to apply,
§ 18-3-102(2)(a), (f), neither participation nor
disengagement equate to the commission of the charged
offense, as discussed above. Hence, unlike the entrapment
defense, the affirmative defense to felony murder is not
"inextricably intertwined" with the commission of
the underlying offense. See Gallegos, ¶¶
30, 38, 535 P.3d at 117-18. Thus, the "admission"
theory animating affirmative defenses generally doesn't
address the specific statutory language of the felony murder
defense-and is therefore not determinative of the question
before us.[10]

         ¶39
In sum, we agree with the division that the felony murder
defense is "consistent with a defendant's denial
that he engaged in criminal conduct," id. at
¶ 40, 535 P.3d at 118, and hold that defendants need not
admit the predicate felony to raise the affirmative defense
to felony murder.

21

         III.
Conclusion

         ¶40
For the foregoing reasons, we affirm the judgment of the
court of appeals.

---------

Notes:

[1] We granted certiorari to review the
following issue:

Whether the division erred in concluding that a
defendant need not be compelled to admit the predicate felony
to raise the statutory felony murder affirmative defense when
the evidence conflicted as to whether the defendant was
involved in the predicate felony.

[2] In 2021, the legislature reclassified
felony murder from first to second degree murder. Ch. 58,
sec. 1-2, §§ 18-3-102 to -103, 2021 Colo. Sess.
Laws 235, 235-36; § 18-3-103(1)(b), C.R.S. (2024).
Because the 2018 statute was in effect at the time of the
events in this case, that version applies to Gallegos's
felony murder charge.

[3] Gallegos was also convicted of
attempted aggravated robbery, conspiracy to commit aggravated
robbery, and attempted theft.

[4] Here, the underlying felony charges
were aggravated robbery, attempted aggravated robbery, and
conspiracy to commit aggravated robbery.

[5] The 2021 update narrowed this
requirement, limiting criminal liability to a death
"caused by any participant." 2021 Colo. Sess. Laws
at 235-36.

[6] In the 2021 update, the legislature
removed conditions (d) and (f) from the affirmative defense.
2021 Colo. Sess. Laws at 235-36.

[7] In the People's reply brief, they
argue, for the first time, that any error in the trial
court's refusal to issue Gallegos's requested
instruction was harmless. Because we need not review
arguments raised for the first time in a reply brief, we
decline to do so here. See Davis v. Pursel, 134 P.
107, 112 (1913).

[8] This reasoning applies with equal
force to the "participation" aspects of the felony
murder affirmative defense's fourth through sixth
conditions. See § 18-3-102(2)(d)-(f).

[9] Even though the crime of felony murder
necessarily involves committing a predicate felony, its
affirmative defense is just that-a defense to felony
murder, which is separate from the predicate felony.
That is, prevailing on the affirmative defense to felony
murder doesn't excuse commission of the predicate offense
or alter any potential liability for that offense.

[10] Because this case is specific to the
felony murder defense, we decline to address whether a
defendant may raise other affirmative defenses while also
denying committing the underlying crime.

---------